UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RASAUHN T.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | )  No. 1:21-cv-00439-JMS-DLP |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
| *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Rasauhn T.'s mother, Tamie T., filed an application for supplemental security income ("SSI") on Rasauhn T.'s behalf on March 10, 2017. [Filing No. 9-5 at 2-5.] The application was denied initially, [Filing No. 9-3 at 2-9], and upon reconsideration, [Filing No. 9-3 at 10-21]. Administrative Law Judge ("ALJ") T. Whitaker held a hearing on the application on September 9, 2019, and issued an opinion on June 16, 2020, concluding that Rasauhn T. was not entitled to benefits. [Filing No. 9-2 at 31-42; Filing No. 9-2 at 93-105.] The Social Security Administration Appeals Council denied review. [Filing No. 9-2 at 18.] Rasauhn T., without the assistance of counsel, timely filed this civil action asking the Court to review the denial of benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c). [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

>(1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2] "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning SSI and disability insurance benefits ("DIB"), which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND[3]

Rasauhn T. was 19 years old as of his SSI application date. [*See* Filing No. 9-5 at 2.] In his application, he alleged disability due to autism and listed an onset date of April 22, 2000, his third birthday.[4] [Filing No. 9-3 at 3; Filing No. 9-5 at 2.]

When Rasauhn T. was three years old, evaluation placed him in the "mildly mentally disabled range of intellectual development," and he was diagnosed with autism spectrum disorder [Filing No. 9-7 at 24-27 (capitalization omitted); *see also* Filing No. 9-7 at 55.] Throughout his schooling, Rasauhn T. received support through an Individualized Education Program ("IEP"). [*See* Filing No. 9-7 at 1-28.]

School records from 2015 relating to Rasauhn T.'s IEP noted that "[b]ased on a battery of tests[,] Rasauhn [T.] appear[ed] to score within the mildly cognitively disabled range of intellectual ability" and "display[ed] weaknesses in socialization and communication." [Filing No. 9-7 at 4.] The report further noted that Rasauhn T. displayed the following characteristics: (1) he "needs a lot of repetition to get a concept"; (2) he was "not able to be fully independent in classes that [had]

---

[3] The evidence of record is amply set forth in the parties' briefs and need not be repeated in full here. Only the facts relevant to the disposition of this case are summarized below.

[4] Because Rasauhn T. alleged an onset date during his childhood, the ALJ construed the application as containing an implied motion to reopen a prior case in which Rasauhn T. had applied for benefits as a minor and had been denied benefits. [Filing No. 9-2 at 32.] The ALJ declined to reopen the prior case and then considered whether Rasauhn T. is disabled under the standards that apply to adults. [Filing No. 9-2 at 32-34.] Rasauhn T. does not challenge this course of action, and the Court will apply the adult disability standards as the ALJ did.

a lot of requirements and information presented," and he needed access to a paraprofessional and "appropriate accommodations" to be successful in such classes; (3) he was unable to "transition well from one thing to the next" and "often need[ed] prompt[ing] to go on to something else or else he [would] just sit there"; and (4) he took a long time to grasp routines, such that "[j]ust when you think he understands the routine, he will act as though he has never done it before." [Filing No. 9-7 at 4.] According to the report, Rasauhn T. "struggles with understanding how to handle certain social situations," and "is not able to read social cues, including body language and expressions[] of others." [Filing No. 9-7 at 5.] He "also has a very delayed processing speed," which was "why he needs instructions in clear steps, one at a time, and often repeated many times." [Filing No. 9-7 at 5.] Pursuant to the IEP, Rasauhn T. was provided with various accommodations for testing and assignments, including extra time, use of a calculator or assistive technology, testing in a small group setting, tests read aloud to him, and clear assignment guidelines provided in written form. [Filing No. 9-7 at 7.]

Also in 2015, Rasauhn T. received assistance through the State of Indiana's Vocational Rehabilitation Services ("VRS"). [Filing No. 9-7 at 30-37.] He was referred by VRS for a psychological evaluation by Dr. J. Patrick Jones, which revealed that Rasauhn T. has an IQ of 71. [Filing No. 9-7 at 40.] Dr. Jones diagnosed Rasauhn T. with borderline intellectual functioning and an "Academic or Educational Problem." [Filing No. 9-7 at 44.] He noted that Rasauhn T.'s "overall intellectual functioning [was] in the borderline range," and testing revealed "low average verbal comprehension, extremely low perceptual reasoning, low average working memory, and borderline processing speed." [Filing No. 9-7 at 44.] His adaptive functioning was "moderately low," with scores in the moderately low range for communication, daily living skills, and socialization. [Filing No. 9-7 at 44.] Rasauhn T. had a low average ability to understand and

5

utilize verbal and factual information; average ability to recall verbal knowledge; "extremely low" ability to process, manipulate, reason, and form concepts with visual and spatial information; and low average ability to hold and manipulate information in short-term memory. [Filing No. 9-7 at 40.] Dr. Jones opined that because Rasauhn T. was "an agreeable, thoughtful, and reasonably conversant young man," it was possible that "others may have expectations of higher academic competence and problem-solving ability than he is capable of." [Filing No. 9-7 at 44-45.]

An SSA psychological consultant, Dr. Kenneth McCoy, opined that Rasauhn T.'s "inattention and rigid thinking may interfere with" his ability to attend to a simple, repetitive task continuously for a two-hour period. [Filing No. 9-7 at 91.] Dr. McCoy also noted that Rasauhn T. had a "mild level of difficulty with inattention and distractibility." [Filing No. 9-7 at 90.] He could recall three out of four objects immediately after they had been presented, and could recall two out of four objects after a five-minute delay. [Filing No. 9-7 at 90.] Dr. McCoy opined that Rasauhn T.'s work pace was "[s]low to within normal limits," and that "minimal supervision may be needed." [Filing No. 9-7 at 91.]

Tamie T., Rasauhn T.'s mother, reported that Rasauhn T. has problems with memory, completing tasks, concentration, understanding, and following instructions. [Filing No. 9-6 at 26.] She reported that he is easily confused, it is hard for him to understand simple directions, he is forgetful at times, and he has to ask for help often. [Filing No. 9-6 at 26.] In addition, she reported that he can concentrate for about an hour before needing a break. [Filing No. 9-6 at 26.] Rasauhn T. reported similar information, noting that his autism sometimes makes it hard for him to understand things or remember to do things, that he can pay attention for one or two hours before needing a break, and that he "get[s] confused with a lot of changes." [Filing No. 9-6 at 16-17.]

6

Both Rasauhn T. and Tamie T. reported that he is able to care for his cat, prepare simple meals, and help with household chores. [Filing No. 9-6 at 11-28.]

At the hearing before the ALJ, Rasauhn T. testified that he has completed approximately ten college credits, but he received accommodations during those classes. [Filing No. 9-2 at 71-73.] Rasauhn T. testified that he self-published a book on Amazon, sold a few copies, and earned approximately $58 from the sales in one month, mostly from family and friends. [Filing No. 9-2 at 74-75.] He spends approximately eight to ten hours per day studying the Chinese and Japanese languages on the internet. [Filing No. 9-2 at 77.] He spends three to four hours per day writing a book. [Filing No. 9-2 at 78.] Rasauhn T. stated that he traveled to China with his brother and his brother's professional basketball team, and during the trip, he acted as an interpreter for the team. [Filing No. 9-2 at 80.] When asked if he felt he could work a full-time job on a continuous basis, Rasauhn T. stated that he believed he could work as a Chinese or Japanese interpreter. [Filing No. 9-2 at 81.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Rasauhn T. was not disabled. [Filing No. 12-2 at 17-34.] Specifically, the ALJ found as follows:

- At Step One, Rasauhn T. had not engaged in substantial gainful activity[5] since the application date. [Filing No. 9-2 at 34.]

- At Step Two, Rasauhn T. has the following severe impairments: borderline intellectual functioning and autism spectrum disorder. [Filing No. 9-2 at 34.]

- At Step Three, Rasauhn T. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 9-2 at 34-37.]

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

- After Step Three but before Step Four, Rasauhn T. had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to simple, routine, and repetitive one or two step work tasks; limited to only physical work with 'physical work' defined as touching the object to perform a work task; no production rate or pace work; limited to work with only occasional work place changes; limited to work with no interaction with the public; limited to work with only occasional interaction with coworkers and no tandem tasks with coworkers; and limited to work with only occasional interaction with supervisors." [Filing No. 9-2 at 37.]

- At Step Four, Rasauhn T. had no past relevant work. [Filing No. 9-2 at 40.]

- At Step Five, relying on the testimony of the vocational expert ("VE") and considering Rasauhn T's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that he can perform, such as automobile detailer, linen room attendant, and hospital housekeeper. [Filing No. 9-2 at 40-41.]

### III.
#### DISCUSSION

Because Rasauhn T. is proceeding without the assistance of counsel, the Court construes his briefing liberally. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Applying this standard, the Court gleans from Rasauhn T.'s filings the following claims of error: (1) the ALJ failed to recognize his asthma as a severe impairment at Step Two and failed to account for his asthma symptoms in determining his RFC; (2) the ALJ erroneously concluded at Step Three that Rasauhn T.'s impairments do not meet or medically equal the severity of a listed impairment; and (3) the ALJ failed to support the mental RFC finding with substantial evidence. [Filing No. 11.] For the reasons explained below, the Court concludes that the ALJ committed reversible error in crafting Rasauhn T.'s RFC, and therefore the Court addresses only that issue without considering the other claims raised.

Regarding the RFC determination, Rasauhn T. argues that his borderline intellectual functioning disorder and autism "restrict him from doing a full range of sedentary work and erode

8

the occupational base altogether." [Filing No. 11 at 2 (emphasis omitted).] He points out that he has received support through VRS and his IEP, which reflect that he needs accommodations and constant prompting in order to successfully complete schoolwork and other tasks. [Filing No. 11 at 2.] Rasauhn T. argues that the ALJ ignored the results of his 2015 psychological testing, Dr. McCoy's evaluation, and Rasauhn T.'s subjective description of his limitations, all of which demonstrate his inability to meet the basic demands of unskilled work. [Filing No. 11 at 4-6.]

The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. [Filing No. 14 at 9-13.] Specifically, the Commissioner contends that although the ALJ acknowledged Rasauhn T.'s autism and borderline intellectual functioning, the ALJ nonetheless noted that Rasauhn T.'s "academic achievements are higher than testing would suggest," pointing to his ability to complete some college classes, his fluency in Chinese and Japanese, his ability to serve as a translator for his brother's basketball team during a trip to China, his ability to write and self-publish a book, and his activities of daily living. [Filing No. 14 at 10.] The Commissioner further argues that the ALJ properly considered medical opinions regarding Rasauhn T.'s mental functioning, including Dr. McCoy's opinion and the opinion of the reconsideration-level state evaluator, Dr. Patricia Garcia. [Filing No. 14 at 11-12.] The Commissioner contends that Dr. McCoy's opinion does not state that Rasauhn T. is unable to perform unskilled work, and in any event the Court is not permitted to reweigh the opinion evidence. [Filing No. 14 at 12-13.]

In reply, Rasauhn T. reiterates that his borderline intellectual functioning and autism are documented in his history of support through IEPs and VRS and notes that these disorders are lifelong disorders without a cure. [Filing No. 17 at 1.] He asserts that the Commissioner and the ALJ rely on his own testimony to conclude that he is not as limited as his psychological evaluations would suggest, but his testimony is not entirely reliable because his intellectual disabilities

9

impaired his ability to understand what was being asked of him at the hearing and caused him to overestimate his abilities. [Filing No. 17 at 2; Filing No. 17 at 7.] Rasauhn T. argues that the ALJ and the Commissioner "mistake [his] slight accomplishments for actual intellectual ability" and mistake his obsessive interests in Asian languages and culture for capability as a translator. [Filing No. 17 at 10-11.]

At the outset, the Court notes that both the ALJ and the Commissioner rely heavily on Rasauhn T.'s testimony that he would like to work as a Chinese or Japanese translator. The Commissioner, for example, emphasizes this testimony in the first line of her brief. [Filing No. 14 at 1 ("[Rasauhn T.] testified he could work as a Chinese or Japanese interpreter on a regular and continuous basis for forty hours per week despite his impairments.").] But nothing in the record supports this testimony, and in fact the evidence directly contradicts it. When asked whether a hypothetical claimant with the RFC that the ALJ ultimately attributed to Rasauhn T. could perform work as a translator, the VE unequivocally said no. [*See* Filing No. 9-2 at 85-86 (VE testifying that working as a translator would require more interaction with others than the hypothetical allowed and that "an interpreter or translator is actually a highly skilled, SVP 7 position," whereas the hypothetical claimant was limited to unskilled work).] Although Rasauhn T. stated that he had served as a translator for his brother's basketball team during a trip to China, there is no information in the record concerning how effective he was in that role or whether he functioned in a capacity that was in any way similar to what would be required from a paid translator. In short, Rasauhn T.'s unsupported belief that he can work as a translator does not support the ALJ's conclusion that he is capable of performing unskilled work. The same can be said regarding the fact that he wrote and self-published a book, given that there is no evidence concerning the length, complexity, quality, or any details of the book or that it achieved success

outside of Rasauhn T.'s circle of family and friends, and in any event writing a book is not in any way related to the unskilled physical work described in the RFC.

In a similar vein, although it appears that Rasauhn T. achieved some level of academic success to the extent that he graduated from high school and was able to complete some college courses, it is significant that he achieved these things with the support, assistance, and accommodations reflected in his IEP. The Court in no way intends to diminish Rasauhn T.'s accomplishments, but merely points out that it is unclear how these accomplishments requiring support equate to an ability to perform unskilled, physical, repetitive work without any support. The degree of support needed to achieve these accomplishments is a factor that should be considered when determining Rasauhn T.'s capabilities. *See* 20 C.F.R. § 416.924a(5)(ii) (regulation concerning disability determinations for children, which states: "We recognize that children are often able to do things and complete tasks when given help, but may not be able to do these same things by themselves. Therefore, we will consider how much extra help you need, what special equipment or devices you use, and the medications you take that enable you to participate in activities like other children your age who do not have impairments."); *Edwards ex rel. L.T. v. Colvin*, 2013 WL 3934228, at *10-11 (N.D. Ill. July 30, 2013) (noting that "Social Security Ruling 09–2p lays great stress on the supports given to a child in special education" and explaining that the ALJ must consider the accommodations a child receives in determining the child's limitations).

In addition, in support of the ALJ's decision, the Commissioner points to the opinion of Dr. Garcia. The ALJ assigned this opinion "partial weight," noting that it was "minimally supported, but generally consistent with the evidence." [Filing No. 9-2 at 39.] Dr. Garcia considered Rasauhn T.'s autism as a severe impairment, but considered "Neurodevelopmental Disorders" as a non-

11

severe impairment, and ultimately opined that Rasauhn T. can "understand, remember, and carry out unskilled tasks"; "relate on a superficial and ongoing basis with co-workers and supervisors"; "attend to tasks for a sufficient period to complete tasks"; and "manage the stress involved with unskilled work." [Filing No. 9-3 at 15-19.] In considering this opinion, the ALJ stated that "the complete record, including the claimant's intellectual testing, and repeated notations of the claimant struggling to read social cues, justify including borderline intellectual functioning with the claimant's severe impairments, as well as supporting additional limitations to accommodate the claimant's social deficits, in spite of his accomplishments." [Filing No. 9-2 at 39.] Borderline intellectual functioning, however, was not addressed in Dr. Garcia's opinion.

The ALJ limited Rasauhn T.'s RFC as it relates to interacting with others in order to account for the social limitations caused by his autism. [*See* Filing No. 9-2 at 39 ("Based on his diagnosis of Autism Spectrum Disorder, the claimant is restricted to work with only occasional work place changes, no interaction with the public, occasional interaction with coworkers, no tandem tasks with coworkers, and occasional interaction with supervisors.").] The ALJ did not, however, explain how Rasauhn T.'s borderline intellectual functioning—which the ALJ deemed significant enough to classify as a severe impairment—is fully accounted for by limiting him to simple, routine, and repetitive one- or two-step tasks or "physical work." Indeed, this issue is not addressed in Dr. Garcia's opinion and the evidence suggests that Rasauhn T. struggles with routines and requires assistance, prompting, and accommodations to complete tasks.

For all of these reasons, the Court finds that the ALJ failed to articulate an accurate and logical bridge between the evidence and the RFC determination. *See Peeters*, 975 F.3d at 641. This error requires remand. *E.g., Aranda v. Berryhill*, 312 F. Supp. 3d 685, 689-90 (N.D. Ill. 2018)

("[T]he case must be remanded if the ALJ fails in his or her obligation to build that logical bridge.").

## IV.
### CONCLUSION

Based on the foregoing, the Court **REVERSES** the ALJ's decision denying Rasauhn T. benefits and **REMANDS** this matter for further proceedings consistent with this opinion,[6] pursuant to 42 U.S.C. §§ 405(g) (sentence four) and 1383(c). Final judgment shall issue accordingly.

Date: 11/23/2021

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Rasauhn T.
879 Westgate Dr.
Anderson, IN 46012

---

[6] On remand, in addition to addressing the issues outlined in this Entry, the ALJ should be sure to consider the potential limiting effects of Rasauhn T.'s asthma and whether his impairments or combination of impairments meets or medically equals any relevant listing.